IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| TOCCOA, LTD. § | |
| § | |
| v. § | |
| § | |
| NORTH AMERICAN ROOFING § | CIVIL ACTION NO.  1:21-CV-00313 |
| SERVICES, LLC AND AMERICAN § | JUDGE MICHAEL J. TRUNCALE |
| ZURICH INSURANCE COMPANY § | |
| § | |
| v. § | |
| § | |
| DAREV CONTRACTING SERVICES, LLC § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant/Counter Claimant/Third-Party Plaintiff North American Roofing Services, LLC ("NAR")'s Motion for Partial Summary Judgment Against Plaintiff, Toccoa, LTD [Dkt. 75] and Defendant/Third-Party Defendant DAREV Contracting Services, LLC ("DAREV")'s Motion for Summary Judgment [Dkt. 70]. For the reasons discussed below, NAR's motion is denied, and DAREV's motion is granted in part and denied in part.

### I.  BACKGROUND

On January 3, 2020, Toccoa and NAR entered a contract (the "Contract") under which NAR agreed to re-roof Toccoa's Beaumont warehouse (the "Warehouse") in exchange for $1,676,450. [Dkts. 75 at 2; 75-1 at 3]. NAR employed DAREV as a subcontractor on this project, per an ongoing agreement (the "Subcontract") that NAR and DAREV entered in 2012.

On August 5, 2020, after the roof construction ceased for the day, a storm hit Beaumont and flooded the Warehouse's interior, causing significant damage.[1] Toccoa subsequently brought this suit against NAR; DAREV; its insurer, Zurich Insurance Company, and the roofing material manufacturer, Firestone Building Products Company, LLC. [Dkt. 52 at 1]. Several counter

---

[1] Toccoa refers to the storm as a "common summer thunderstorm," [Dkt. 52 at 3], while DAREV labels it a "freak storm," [Dkt. 70 at 3], and NAR contends that it was "an Act of God." [Dkt. 59 at 5].

claims and third-party claims followed Toccoa's complaint. Currently at issue is one of NAR's counter claims against Toccoa, Toccoa's claims against DAREV, and NAR's third-party claims against DAREV. The Court addresses each in turn.

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is proper when the pleadings and evidence demonstrate that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law." *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005) (internal citations omitted); Fed R. Civ. P. 56(c). An issue is material if its resolution could affect the outcome of the action. *DIRECTV*, 420 F.3d at 536. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* All reasonable inferences must be drawn in favor of the nonmoving party. *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002). There is no genuine issue of material fact if, when the evidence is viewed in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (citations omitted). And although courts consider the evidence in the light most favorable to the nonmoving party, "conclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment." *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)).

### III.  DISCUSSION

**A.  NAR's Motion for Partial Summary Judgment against Toccoa**

The Contract between NAR and Toccoa required Toccoa to carry all-risk builder's risk property insurance. [Dkt. 75-1 at 12]. NAR's relevant counter claim alleges that "Toccoa breached the Contract by failing and/or refusing to obtain a builder's risk policy of the type specified in the Contract" and that the damages Toccoa seeks from NAR "would have been covered had Toccoa properly complied with its duties under the terms of the Contract." [Dkt. 59 at 9–10]. NAR now seeks summary judgment "on any damages pursued by Toccoa that would have been covered by the property insurance . . . which Toccoa was required to purchase and maintain under the Contract." [Dkt. 75 at 5].

> The Contract provides:
>
> Owner shall carry all-risk builder's risk property insurance (subject to deductible amounts selected by Owner) for the full completed value of the Work (including any Change Orders) until Final Completion of the Work. **Insurance is to cover Work** at the construction site and/or while it is stored at Owner-approved offsite areas or is in transit (at the risk of a named insured) and shall insure against the perils of fire and extended coverage, including, without duplication of coverage, flood, earthquake, theft, vandalism and malicious mischief.

[Dkt. 75-1 at 12] (emphasis added). The Contract defines "Work" as "all labor, material, equipment, supervision, coordination, tools, supplies, services, expenses and other items necessary for the installation of a new roof and decking where needed . . . on the building located at 650 23rd Street, Beaumont, Texas." *Id.* at 2.

Through its claims against NAR, Toccoa seeks to recover for damage to the Warehouse's interior—specifically, its floors, interior walls, and ceiling. [Dkts. 52 at 4; 77 at 5]. The Contract only required Toccoa to carry insurance that covers "Work." [Dkt. 75-1 at 12]. The Warehouse's floors, interior walls, and ceiling are not "labor, material, equipment, supervision, coordination, tools, supplies, services, expenses [or] other items necessary for the installation of a new roof

3

and decking." *See id.* Moreover, Toccoa's alleges damages caused by wind and rain—not fire, flood, earthquake, theft, vandalism, or malicious mischief. Because the Contract did not require that Toccoa carry insurance covering the damages that Toccoa seeks, the Court denies NAR's motion for summary judgment.

## B. DAREV's Motion for Summary Judgment against Toccoa and NAR

### 1. DAREV is entitled to summary judgment on Toccoa's breach of contract claims.

The Court understands Toccoa's complaint as alleging that DAREV breached both the Contract between Toccoa and NAR and the Subcontract between DAREV and NAR. [Dkt. 52 at 5]. To prevail on a breach of contract claim in Texas, the plaintiff must establish: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Intern., Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (internal quotation marks omitted). "[A] party must show either privity or third-party-beneficiary status in order to have standing to sue for breach of contract." *Ostrovitz & Gwinn, LLC v. First Specialty Ins. Co.*, 393 S.W.3d 379, 387 (Tex. App.—Dallas 2012, no pet.); *see First Bank v. Brumitt*, 519 S.W.3d 95, 102 (Tex. 2017) (quoting *House v. Hous. Waterworks Co.*, 31 S.W. 179, 238 (Tex. 1895)) ("As a general rule, the benefits and burdens of a contract belong solely to the contracting parties, and 'no person can sue upon a contract except he be a party to or in privity with it.'").

"Privity exists if the defendant was a party to an enforceable contract with either the plaintiff or someone who assigned his or her cause of action to the plaintiff." *Ostrovitz & Gwinn*, 393 S.W.3d at 387. A third-party beneficiary is a third party who may recover on a contract made between other parties, but *only* if: (1) "the parties intended to secure some benefit to that third party," and (2) "the contracting parties entered into the contract directly for the third party's

4

benefit." *MCI Telecomms. Corp. v. Tex. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999). "To determine whether the contracting parties intended to directly benefit a third party and entered into the contract for that purpose, courts must look *solely* to the contract's language, construed as a whole." *First Bank*, 519 S.W.3d at 102 (emphasis added). "The contract must include 'a clear and unequivocal expression of the contracting parties' intent to directly benefit a third party,' and any implied intent to create a third-party beneficiary is insufficient." *Id.* at 103 (quoting *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011)). "It is not enough that the third party would benefit— whether directly or indirectly—from the parties' performance, or that the parties knew that the third party would benefit." *Id.* at 102.

### i. *Toccoa is not a third-party beneficiary to the Subcontract.*

The Court first addresses Toccoa's claim that DAREV breached the Subcontract. Even though Toccoa is not a party to the Subcontract, Toccoa argues that it may enforce the contract as a third-party beneficiary because DAREV and NAR entered the Subcontract for Toccoa's benefit. [Dkt. 76 at 7–8]. Conversely, DAREV contends that Toccoa is not a third-party beneficiary, and seeks summary judgment to that effect. [Dkt. 70 at 8].

DAREV and NAR entered the Subcontract on October 31, 2012—over seven years before NAR contracted with Toccoa. [Dkt. 76-13 at 1]. The Subcontract is not limited to one specific project; it governs NAR's ongoing employment of DAREV as an independent contractor. *See id.* at 3. The Subcontract provides that NAR will issue DAREV contract work orders for DAREV to review and accept. *Id.* Once NAR receives a signed work order from DAREV, the subcontract authorizes DAREV to begin work, subject to the Subcontract's terms. *Id.* That is exactly what happened here: NAR contracted with Toccoa on January 3, 2020, [Dkt. 75-1], and then issued a work order to DAREV, which DAREV signed. [Dkt. 76-14].

Toccoa argues that when the Contract, Subcontract, and work order "are viewed as a whole, it is clear DAREV entered into an agreement with NAR for completion of the reroof process with the express and clear intention of benefitting Toccoa." [Dkt. 76 at 8]. The Court's inquiry into whether Toccoa is a third-party beneficiary of the Subcontract is strictly limited to the Subcontract's language, however. *See First Bank*, 519 S.W.3d at 102. The Subcontract's language does not include any indication—let alone a clear and unequivocal expression—that NAR and DAREV intended to directly benefit Toccoa. *See id.* at 103. Toccoa is neither a party, nor a third-party beneficiary, to the Subcontract, and therefore cannot enforce it. Accordingly, DAREV is entitled to summary judgment on Toccoa's claim that DAREV breached the Subcontract.

### ii. *Toccoa cannot enforce the Contract against DAREV.*

Toccoa also seems to claim that DAREV breached the Contract between Toccoa and NAR. *See* [Dkt. 52 at 5] ("DAREV is liable for breach of contract . . . DAREV failed to carry out the reroofing process in a good and workmanlike manner in accordance with the [Contract]."). But DAREV is not a party to the Contract; only Toccoa and NAR are. *See* [Dkt. 75-1 at 1]. Because DAREV is not a party to the Contract, privity does not exist. *See Ostrovitz & Gwinn*, 393 S.W.3d at 387. Without privity, Toccoa cannot enforce the Contract against DAREV. DAREV is entitled to summary judgment on Toccoa's claim that DAREV breached the Contract.[2]

### 2. **DAREV is not entitled to summary judgment on Toccoa's negligence claim.**

Toccoa also brings a negligence claim against DAREV. Specifically, Toccoa alleges that DAREV owed Toccoa a duty to ensure that no damage was done to the Warehouse as a result of

---

[2] To the extent that Toccoa claims that NAR is liable for breach of contract for DAREV's conduct, this ruling leaves that claim undisturbed.

the re-roofing, that DAREV breached this duty by "negligently failing to properly secure the section of the roof being worked on before a common summer thunderstorm passed through Beaumont," and that this failure "proximately resulted in sections of the roof peeling back and large amounts of water flooding into the Warehouse, causing substantial damage to the Warehouse's floors, interior walls and ceiling." [Dkt. 52 at 4]. DAREV seeks summary judgment on this claim. [Dkt. 70 at 4–8].

DAREV argues that it acted with utmost care, met industry standards, fulfilled all contractual obligations, and took precautionary measures. *Id.* at 5. Nonetheless, DAREV concedes that it did not prepare for a storm of this caliber. *Id.* ("[T]he one thing DAREV did not do was prepare for an unforeseen circumstance."). Conversely, citing NOAA and the National Weather Service Storm Prediction Center's forecasts that severe thunderstorms were possible, Toccoa argues that the storm was foreseeable. [Dkts. 76-1; 76-2]. Whether the storm was foreseeable presents a genuine issue of material fact.

Whether DAREV failed to properly secure the roof is also a genuine issue of material fact that precludes summary judgment. Toccoa alleges that "DAREV failed to apply the necessary glue or adhesive to create a watertight seal, and because of this negligence, a portion of the roof blew back and Toccoa's warehouse was flooded." [Dkt. 76 at 5]. DAREV provides testimony from its corporate representative, Rigoberto Guillen, that DAREV's common practice of securing the roof using "tie-ins" is the same regardless of whether it anticipates rain. [Dkt. 70 at 6] (citing [Dkt. 70-6 at 98:18–99:20]). But Mr. Guillen conceded that it "would be good policy" to use a wide strip of glue when "tying-in" the roof on nights when storms are expected. [Dkt. 76-4 at 57:16–19]. Likewise, Firestone's application guide provides:

7

> 1. At the completion of each day's work or before the onset of inclement weather, a watertight temporary seal must be established by the roofing applicator at any loose edge of membrane.
>
> 2. Install temporary seal or flashing strip to ensure that moisture does not flow beneath or damage any completed section of the new roofing system.

[Dkt. 76-7]. As evidence that DAREV failed to do this, Toccoa provides the Court with two pictures. The first shows how the glue leaves a visible residue on the roof when it is used. *See* [Dkt. 76-6]. The second picture shows the roof covering that allegedly blew back. *See* [Dkt. 76-5]. No glue residue is visible in the second picture. *See id.* This evidence establishes a genuine issue of material fact as to whether DAREV properly secured the roof.[3] Accordingly, the Court denies DAREV's Motion for Summary Judgment on Toccoa's negligence claim.

### 3.  DAREV is not entitled to summary judgment on NAR's third-party claims.

DAREV purports to seek summary judgment on NAR's third-party claim that DAREV failed to perform in a good and workmanlike manner or in substantial compliance with the contract documents. [Dkt. 70 at 4]. DAREV seems to misunderstand NAR's third-party claim. NAR does not take issue with DAREV's performance. To the contrary, NAR's position is that "[Toccoa's] allegations that NAR and DAREV failed to perform the work under the . . . Contract between Toccoa and NAR in a good and workmanlike manner, and free from defect are not well founded or supported." [Dkt. 80 at 4]. NAR's third-party claims simply provide that if Toccoa prevails on its claims against NAR based on DAREV's allegedly deficient work, that DAREV should be liable to NAR for breach of express warranty and/or breach of contract. *Id*; [Dkt. 7 at 3–4]. Because genuine issues of material fact exist as to whether DAREV performed in a good

---

[3] DAREV also purports to cite testimony from NAR's representative, Thomas Brouillard, that DAREV's securing method complied with NAR's expected standard. [Dkt. 70 at 6] (citing [Dkt. 70-8]). The Court could not locate this testimony in the exhibit cited by DAREV. *See* [Dkt. 70-8]. Regardless, this testimony would not resolve the genuine issue of material fact here.

and workmanlike manner or in substantial conformance with the contract, *see* discussion *supra* Section III.B.2., summary judgment is improper.

## IV.   CONCLUSION

It is therefore **ORDERED** that North American Roofing Services, LLC's Motion for Partial Summary Judgment Against Plaintiff, Toccoa, Ltd [Dkt. 75] is **DENIED**.

It is further **ORDERED** that DAREV Contracting Services, LLC's Motion for Summary Judgment [Dkt. 70] is **GRANTED in PART** and **DENIED in PART**. It is granted only as to Toccoa's breach of contract claims against DAREV. The rest of DAREV's motion is denied.

It is further **ORDERED** that Toccoa, Ltd.'s breach of contract claims against DAREV Contracting Services, LLC are **DISMISSED WITH PREJUDICE**.

**SIGNED this 25th day of May, 2023.**

_____
Michael J. Truncale
United States District Judge