IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| TOCCOA LTD., <br><br> Plaintiff, <br><br> v. <br><br> NORTH AMERICAN ROOFING SERVICES, LLC, AMERICAN ZURICH INSURANCE COMPANY, AND FIRESTONE BUILDING PRODUCTS COMPANY, <br><br> Defendants, <br><br> v. <br><br> DAREV CONTRACTING SERVICES, <br><br> Third-Party Defendant. | NO. 1:21-CV-00313-MJT |

**REPORT AND RECOMMENDATION GRANTING DEFENDANT AMERICAN ZURICH INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**

This insurance case is assigned to the Honorable Michael J. Truncale, United States District Judge.  Judge Truncale has referred Defendant American Zurich Insurance Company's (hereinafter, "Zurich") *Motion for Summary Judgment* (Doc. No. 96), and Plaintiff Toccoa, Ltd.'s ("Toccoa") *Motion to Strike American Zurich Insurance Company's Sur-Reply* ("Motion to Strike") (Doc. No. 115) and *Motion for Oral Hearing* (Doc. No. 117) to the undersigned United States Magistrate Judge for consideration and disposition.  Doc. No. 122.  As the court is bound to follow the plain text of the parties' underlying builders risk insurance policy, which explicitly excludes coverage for the structure at the heart of this controversy, the undersigned recommends granting Zurich's instant *Motion for Summary Judgment* (Doc. No. 96).  As such, the court denies Toccoa's *Motion to Strike* (Doc. No. 115) and *Motion for Oral Hearing* (Doc. No. 117) as moot.

I.    **Background**

This is a simple, straightforward insurance dispute.  The parties do not dispute the following recitation of facts.

On January 3, 2020, Toccoa, a Texas Limited Partnership, entered into a construction agreement with Defendant North American Roofing Services, LLC ("North American Roofing"), whereby North American Roofing agreed to replace the roof of Toccoa's existing Beaumont warehouse.  Third Am. Compl., Doc. No. 52 at 1–2, ¶¶ 1–2, 8; Def.'s Mot., Doc. No. 96 at 3. Toccoa contracted with North American Roofing to "perform and furnish to Owner all labor, material, . . . services, expenses and other items necessary for the installation of a new roof and decking where needed" on Toccoa's existing warehouse.  Ex. 1, Doc. No. 97-1 at 1, § 1.  This contract, however, required Toccoa "carry all-risk builder's risk property insurance . . . for the full completed value of the Work . . . until Final Completion of the Work."  *Id.* at 11, § 14.

Thus, around the same time that it entered into a contract with North American Roofing, Toccoa purchased builder's risk insurance coverage from Zurich through the Maida Agency, Inc. ("Maida Agency").  Doc. No. 52 at 2, ¶ 8; *see also* Ex. 4, Doc. No. 97-1 at 50 (builder's risk insurance policy).  The builder's risk policy at issue states, in pertinent part:

> **Builders Risk Coverage Form**
>
> Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered.
>
> . . .
>
> **A.    COVERAGE**
>
> We will pay for direct physical loss or damage to Covered Property from a Covered Cause of Loss described in this Coverage Form.

1.     **Covered Property, as used in the Coverage Form, means:**

Property which has been installed, or is to be installed in any 'commercial structure' or any one to four family dwelling, private garage or other structure that will be used to service the 'commercial structure' or one to four family dwelling at the location which you have reported to us. This includes:

. . .

f.     Foundations of buildings and foundations of structures in the course of construction.

**2. Property Not Covered**

Covered Property does not include:

a.   Existing buildings or structures to which an addition, alteration, improvement, or repair is being made, unless specifically endorsed;

. . .

**3.     Covered Cause of Loss**

Covered Cause of Loss means risk or direct physical loss or damage to Covered Property except those causes of loss listed in Section B. **EXCLUSIONS**.

. . .

**B.  EXCLUSIONS**

1.     We will not pay for loss or damage caused directly or indirectly by or resulting from any of the following.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage.

. . .

**e.  Water**

. . .

(2)   The interior of any building or structure caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

(a) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls

3

> through which the rain, snow, sleet, ice, sand or
> dust enters; . . .

Ex. 4, Doc. No. 97-1 at 46–50.

On August 5, 2020, "a common thunderstorm blew through Beaumont," causing "a portion of the Warehouse's roof being worked on [to] peel[] back" and allow water to flow into the warehouse, flooding the floor and mezzanine office space of the existing warehouse.  Doc. No. 52 at 3, ¶ 11; Doc. No. 96 at 4; Doc. No. 107 at 2.  The next day, Toccoa submitted a claim to Zurich for the storm's damage to the warehouse's roof and interior.  Doc. No. 52 at 3, ¶ 12; Doc. No. 96 at 4.  On November 5, 2020, Zurich's National General Adjuster for Large Loss Property Claims wrote a claim denial letter to Toccoa, stating, in relevant part:

> We understand the [warehouse] sustained wind damage to the roof in connection with the storm which swept through the area on August 5, 2020.  Additional damage was also report[ed] by Toccoa relating [to] ensuing water damage to the interior surfaces of the building.
>
> Please note that after my conversations with you and investigation[,] the following has been confirmed:
>
> • Toccoa's Policy [ ] only includes renovation coverage up to $1,500,000.  This coverage does not include [the] existing building.  It was confirmed that the intent of the policy was to insure replacing the roof.  We understand a substantial amount of damage from rainwater affected the 'existing building['s]' interior surfaces.  As discussed, this ensuing water damage to the interior is exclusive of our adjustment as it is not covered property.

Ex. 9, Doc. No. 97-1 at 371.

On November 23, 2022, Toccoa filed its *Third Amended Complaint* alleging, as against Zurich alone, claims for breach of contract and extracontractual violations of its duty of good faith and fair dealing.  Doc. No. 52 at 4–7, ¶¶ 22–25.  On March 24, 2023, Zurich filed the instant *Motion for Summary Judgment*.  Doc. No. 96.  On April 18, 2023, Toccoa filed its *Response to Defendant American Zurich Insurance Company's Motion for Summary Judgment* ("Response")

(Doc. No. 107), and on April 25, 2023, Zurich filed its *Reply in Support of its Motion for Summary Judgment* ("Reply") (Doc. No. 110).  On May 2, 2023, Toccoa filed its *Sur-Reply to American Zurich Insurance Company's Motion for Summary Judgment* ("Sur-reply") (Doc. No. 112).  On May 23, 2023, Judge Truncale referred Zurich's pending motion for summary judgment to the undersigned for consideration and disposition.  Doc. No. 122.  As the matter is fully briefed, the court will now turn to the pending motion.

## II.    <u>Legal Standard</u>

### A.   <u>Rule 56(a): Summary Judgment</u>

Summary judgment shall be rendered when the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007).  A dispute is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  A fact is material when it is relevant or necessary to the ultimate outcome of the case.  *Id.*  The moving party has the burden of demonstrating that there are no genuine issues of material fact in dispute. *See Celotex Corp.*, 477 U.S. at 323; *Harvill v. Westward Commc'ns, LLC*, 433 F.3d 428, 433 (5th Cir. 2005).  The court resolves any doubts and draws all reasonable inferences in favor of the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587 (1986); *United States ex rel. Longhi v. United States*, 575 F.3d 458, 465 (5th Cir. 2009).

The movant must support its assertion by "citing to particular parts or materials in the record . . . showing that the materials cited do not establish the . . . presence of a genuine dispute, or [showing] that the adverse party cannot produce admissible evidence to support the fact."  FED.

R. Civ. P. 56 (c)(1)(A)-(B). "[T]he court . . . may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 255.

If the movant satisfies its burden, the burden then shifts to the nonmoving party to show that specific facts exist over which there is a genuine dispute or to rebut the charge that the movant is entitled to judgment as a matter of law. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex,* 477 U.S. at 325). Like the movant, the nonmovant must satisfy its burden through specific citations to the summary judgment evidence. *See* Fed. R. Civ. P. 56(c)(1); *Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004). "[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden in a motion for summary judgment." *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) (quoting *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996)) (internal quotation marks omitted).

Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). As a result, "[i]f the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 650 (5th Cir. 2012) (quoting *Harvill v. Westward Commc'ns, LLC*, *et al.*, 433 F.3d 428, 433 (5th Cir. 2005)). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and

on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322.

## III.    Discussion

The main issue in the present dispute is Zurich's denial of its insurance claim for the water damage incurred to the interior of its warehouse.[1]    Corollary, and inherently dependent on the court's decision regarding the first issue, is whether Toccoa's breach of contract and bad faith claims can survive if the parties' insurance policy excludes coverage to the damaged property.

Zurich moves for summary judgment as a matter of law, contending that the plain, ordinary language of the parties' insurance policy clearly and unambiguously excludes coverage for the interior water damage to Toccoa's existing warehouse.  Doc. No. 96 at 8–9.  Instead, Zurich maintains, the parties' policy only provided coverage to the renovation of the warehouse's roof—a new construction project—*not* coverage to the existing structure.  *Id.*  Therefore, Zurich argues, Toccoa's breach of contract claim must fail as a matter of law because Toccoa cannot point to a provision in the contract that Zurich allegedly breached.  *Id.* at 9.  Further, without a live breach of contract claim, Zurich avers that Toccoa's extra-contractual claims should also fail.  *Id.* at 14–18.

---

[1] In its motion, Zurich provided a "STATEMENT OF THE ISSUES TO BE DECIDED BY THE COURT," stating that the first issue is "whether TOCCOA can recover for a breach of contract claim under the Zurich Policy for damage to TOCCOA's existing property or structures when the Zurich policy expressly does not cover TOCCOA's existing property or structure.  Specifically, this Court must decide whether Zurich breached the builders risk insurance policy by denying TOCCOA's claim for water damage to the existing building as the result of an August 5, 2020 windstorm."  Doc. No. 96 at 2 (capitalizations in original).  Toccoa responded that it "does not dispute the first issue raised by Zurich in its motion but only to the extent that the Court must determine whether Zurich breached its contractual obligations.  Naturally, Toccoa explicitly disagrees with Zurich's mistaken contention that the policy expressly does not cover the damage at issue."  Doc. No. 107 at 2, ¶ 4.

Thus, the first issue for this court is limited to Zurich's denial of Toccoa's claim for coverage to the water damage to the interior of its warehouse.  The court will limit its analysis accordingly.

In its operative complaint, Toccoa represents that during acquisition of the builder's policy at issue, it was "under the impression that the Policy covered all damage related to the reroofing process, and that Zurich "has refused to honor the terms of the agreement and compensate Toccoa." Doc. No. 52 at 3, 6, ¶¶ 9, 22.  In its *Response*, Toccoa urges that the insurance policy indeed provides coverage to the interior of its warehouse because of its interpretation of an exception to an exclusion section.  *See* Doc. No. 107 at 4.  Specifically, Toccoa interprets the water exclusion provision of the policy as providing a "Covered Cause of Loss" in this case, because an exception to the water exclusion states the policy will not cover damage as a result of rain unless "[t]he building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters."  *Id.* (quoting the Builder's Risk Policy, Ex. A, Doc. No. 107-1 at 6, § B(1)(e)(2)).

Alternatively, Toccoa believes that this language is ambiguous because the exception to the exclusion provides coverage to "[t]he building or structure," which, in Toccoa's reading, could include a previously existing structure, and not solely a structure under construction.  *Id.* at 5. Similarly, Toccoa maintains the policy is further ambiguous because the policy's definition of "Covered Property" includes "property which has been installed," which could potentially include an already-installed piece of property.  *Id.* at 5–6.  Lastly, Toccoa states that there is a genuine issue of material fact regarding the parties' intent in contracting the insurance policy at issue.  *Id.* at 6 (footnote and citation omitted) ("Zurich's flawed attempt at discerning intent not only undermines and negates Zurich's claim that the Policy unambiguously does not provide coverage for the damages at Toccoa's warehouse, but it also placed a genuine issue of fact before the Court, as intent is a question to be decided by the jury.").  Moreover, Toccoa argues, even if the court grants summary judgment on its breach of contract claim, Toccoa urges that its bad faith claim

8

should still survive due to the Maida Agency's failure to procure it a policy providing coverage for its existing structure. *Id.* at 7 ("Zurich remains liable to Toccoa for Maida's representations to Toccoa on what damages the Policy covered at the time Toccoa paid the premium.").

After reviewing the parties' briefs and the applicable law, the court agrees with Zurich regarding both causes of action.

A. <u>Breach of Contract Claim</u>

The policy at issue is a builder's risk policy for the construction of a new roof installation on Toccoa's warehouse. A builder's risk policy is a type of insurance policy designed to provide coverage during the construction process of a structure. 1 STEVEN PLITT, et al., COUCH ON INSURANCE § 1:53 (3d ed. 2012) ("A builder's risk policy ordinarily indemnifies a builder or contractor against the loss of, or damage to, a building they are currently in the process of constructing"); *see also* 5 JAMES P. BOBOTEK AND STEPHEN S. ASAY, NEW APPLEMAN ON INSURANCE LAW LIBRARY EDITION § 50.01 (2009) (emphasis in original) (internal footnotes omitted) ("[B]uilders risk insurance . . . consists of a unique form of first-party property insurance that typically covers 'projects under construction, renovation, or repair and insures against accidental losses, damages, or destruction of property.' The unique nature of the builder's risk insurance is that it covers a building *during construction*, before it becomes insurable as a completed structure . . . For this reason, builders risk insurance also is sometimes referred to as 'course of construction' coverage."); *id.* ("Coverage under a builders risk policy generally does not apply unless the covered property is in the course of construction or renovation.").

Turning to the instant motion, Toccoa alleges that "Zurich is liable for breach of contract, as it has failed to uphold and perform under the terms of the insurance agreement entered into with Toccoa. More specifically, the damage sustained by Toccoa is covered under the Policy held by

Toccoa." Doc. No. 52 at 6, ¶ 22.  To recover for breach of contract, Toccoa has the initial burden to plead and prove that the insurance policy covers the benefits sought.  *See JAW The Pointe, L.L.C. v. Lexington Ins. Co.*, 460 S.W.3d 597, 603 (Tex. 2015) (citation and internal quotation marks omitted) ("Initially, the insured has the burden of establishing coverage under the terms of the policy."); *see also Buchholz v. Crestbrook Ins. Co.*, 65 F.4th 766, 769 (5th Cir. 2023) (citation omitted) ("In a coverage dispute, the insured has the burden first to prove that their loss falls within the terms of the contract."); *Sivertson v. Citibank, N.A.*, 390 F. Supp. 3d 769, 787 (E.D. Tex. 2019) (citation and internal quotation marks omitted) ("[A] plaintiff suing for breach of contract must point to a specific provision in the contract that was breached by the defendant.").  The burden then shifts to Zurich, which "has the burden to plead and prove that the loss falls within an exclusion to the policy's coverage."  *JAW The Pointe*, 460 S.W.3d at 603 (citations omitted); *Buchholz*, 65 F.4th at 769–770 (same).  Once Zurich proves that an exclusion applies, "the burden shifts back to [Toccoa] to show that an exception to the exclusion brings the claim back within coverage."  *JAW The Pointe*, 460 S.W.3d at 603 (citations omitted); *Buchholz*, 65 F.4th at 770.

The interpretation of the terms of a contract is a question of law for the court to decide. *See Buchholz*, 65 F.4th at 769 (citation omitted) ("Whether an insurance contract is ambiguous is a question of law."); *X Techs., Inc. v. Marvin Test Sys., Inc.*, 719 F.3d 406, 413 (5th Cir. 2013) (citing *Meek v. Bishop Peterson & Sharp, P.C.*, 919 S.W.2d 805, 808 (Tex. App.—Houston [14th Dist.] 1996, writ denied)) ("Whether a party has breached a contract is a question of law for the court."); *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 562 (5th Cir. 2010) (emphasis added) ("Texas law provides that . . . the interpretation of an insurance policy is a question of law *for the court* to determine.").

Determining whether coverage exists under an insurance policy requires applying the rules of contractual construction as expounded under Texas law. *Windermere Oaks Water Supply Corp. v. Allied World Specialty Ins. Co.*, 67 F.4th 672, 674–75 (5th Cir. 2023) (citation and internal quotation marks omitted) ("In a diversity case involving the interpretation of a contract, we apply the substantive law of the forum state."). "Under Texas law, insurance policies are interpreted in accordance with the rules of construction that apply to all contracts generally." *Id.* (citation and internal quotation marks omitted); *see also Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257 (Tex. 2017) (same). "In construing a contract, a court's primary concern is to ascertain the intentions of the parties as expressed in the instrument." *Windermere Oaks*, 67 F.4th at 674 (citation and internal quotation marks omitted); *JAW The Pointe*, 460 S.W.3d at 603.

To determine whether the insurance policy provides coverage, the court first looks to "the language of the policy[,] because [the court] presume[s] [the] parties intend what the words of their contracts say." *JAW The Pointe*, 460 S.W.3d at 602 (citation and internal quotation marks omitted); *see also Windermere Oaks*, 67 F.4th at 675 (citation and internal quotation marks omitted) ("As with any other contract, the parties' intent is governed by what they said."). Thus, the court must interpret a policy's terms according to their "ordinary and generally-accepted meaning[s] unless the policy shows the words were meant in a technical or different sense." *JAW The Pointe*, 460 S.W.3d at 603 (citation and internal quotation marks omitted); *see also Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 892 (Tex. 2017) (citations and internal quotation marks omitted) ("A contract's plain language controls, not what one side or the other alleges they intended to say but did not."). As such, the court must "examine the entire agreement and seek to harmonize and give effect to all provisions so that none will be meaningless." *JAW The Pointe*, 460 S.W.3d at 603 (citation and internal quotation marks omitted); *see also Great Am. Ins. Co.*,

11

512 S.W.3d at 892 ("We have repeatedly held that every contract should be interpreted as a whole and in accordance with the plain meaning of its terms."); *Nassar*, 508 S.W.3d at 258. "No one phrase, sentence, or section of a contract should be isolated from its setting and considered apart from the other provisions." *Nassar*, 508 S.W.3d at 258.

Regarding ambiguity in an insurance contract, "[i]f [the court] determine[s] that only one party's interpretation of the insurance policy is reasonable, then the policy is unambiguous and the reasonable interpretation should be adopted." *Id.* (citation and internal quotation marks omitted). Alternatively, if the court determines that both parties' interpretations are reasonable, then the policy is ambiguous, and "Texas law favors adopting the interpretation in favor of the insured." *Id.* (citation omitted); *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 454 (5th Cir. 2022) (citation omitted). However, "[a] contract is not ambiguous simply because the parties to a lawsuit offer conflicting interpretations of the contract's provisions." *Nassar*, 508 S.W.3d at 258 (citation omitted). Rather, a policy is ambiguous "if it is genuinely subject to more than one meaning after applying the pertinent rules of contract interpretation." *Id.* (citation omitted). Thus, if policy language "lends itself to a clear and definite legal meaning, the contract is not ambiguous and will be construed as a matter of law . . . [a]n ambiguity does not arise merely because a party offers an alternative conflicting interpretation, but only when the contract is actually susceptible to two or more reasonable interpretations." *Great Am. Ins. Co.*, 512 S.W.3d at 893 (citation and internal quotation marks omitted).

Moreover, "'a contract is not necessarily ambiguous simply because some sections arguably conflict.'" *Mosaic Baybrook One, L.P. v. Simien*, No. 19-0612, 2023 WL 3027992, at *16 (Tex. Apr. 21, 2023) (quoting *NuStar Energy, L.P. v. Diamond Offshore Co.*, 402 S.W.3d 461, 466 (Tex. App. — Houston [14th Dist.] 2013, no pet.)). When provisions of an insurance policy

conflict, the court must apply Texas's "long-established precedent that no one phrase, sentence, or section of a contract should be isolated from its setting and considered apart from the other provisions," —instead, the court must read the terms of the policy in harmony with each other, with the understanding that "a specific contract provision controls over a general one." *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 889 (Tex. 2017) (footnote, citation, and internal quotation marks omitted).

With this law established, the instant dispute presents a simple and straightforward analysis. First, in its operative complaint, and once more in its *Response* (Doc. No. 107) Toccoa has failed to satisfy its initial burden of showing coverage for the interior of the warehouse. To survive its breach of contract claim, Toccoa was required to point to a specific provision of the instant policy to show affirmative coverage. *See JAW The Pointe*, 460 S.W.3d at 603 (citation and internal quotation marks omitted) ("Initially, the insured has the burden of establishing coverage under the terms of the policy."); *see also Buchholz*, 65 F.4th at 769 (citation omitted) ("In a coverage dispute, the insured has the burden first to prove that their loss falls within the terms of the contract."); *Sivertson*, 390 F. Supp. 3d at 787 (citation and internal quotation marks omitted) ("[A] plaintiff suing for breach of contract must point to a specific provision in the contract that was breached by the defendant."). Toccoa's operative complaint is devoid of any provision that Zurich allegedly breached, which is fatal to its breach of contract claim. *See* Third Am. Compl., Doc. No. 52 at 6, ¶ 22.

Moreover, Toccoa's *Response* attempts to establish coverage by arguing the language of an exception to an exclusion in the policy. Doc. No. 107 at 4 (emphasis added) ("Specifically, the exclusion pertaining to 'water' provides that damage to the interior of the building or structure caused by rain . . . is not covered *unless* . . .); *JAW The Pointe*, 460 S.W.3d at 603 (citations

omitted); *Buchholz*, 65 F.4th at 770.  While Toccoa may be correct that the builder's risk policy provides coverage for damage resulting from rain and wind if "[t]he building or structure first sustains damage by a Covered Cause of Loss to its roof or walls," this would only establish a "Covered *Cause* of Loss," *and not* that its already-existing warehouse falls under the purview of "Covered Property."  Builder's Risk Policy, Ex. A, Doc. No. 107-1 at 6, § B(1)(e)(2).

For this reason, Toccoa attempts to show that the term "[t]he building or structure" is ambiguous, conflicts with the policy's definition of "Property Not Covered," and that it therefore "includes existing buildings and structures damaged as a result of a 'Covered Cause of Loss.'" Doc. No. 107 at 5 (footnote omitted).  Jumping off this provision in the policy, Toccoa also points out that the policy's definition of "Covered Property" includes "property which has been installed," and Toccoa therefore attempts to show that this too refers to previously existing structures, such as the warehouse at issue in this case.  *Id.*  Such a reading of the policy in this way, however, contravenes the dictates of the Texas Supreme Court, and ultimately reads out pertinent provisions of the policy.

To begin, the builder's risk policy at issue opens with the statement:  "Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered."  Builder's Risk Policy, Ex. A, Doc. No. 107-1 at 1.  Under the definition of "COVERAGE," the policy clearly and unambiguously states "We will pay for direct physical loss or damage to Covered Property from a Covered Cause of Loss described in this Coverage Form."  *Id.*  Thus, even if the court adopted Toccoa's reading of the policy's exception to the water exclusion, this would only provide coverage for a "Cause of Loss" and not "Covered Property."  *See id.* at 5 (emphasis added) ("B. EXCLUSIONS: 1. We will not pay for loss or damage *caused directly or indirectly by or resulting from any of the following*.  Such loss or

14

damage is excluded regardless of any other cause or event that contributes concurrently . . ."); *id.* at 6, § (B)(e)(2)(a) (exception to water exclusion).

More to the point, the policy's definition of "Covered Property" plainly states "f. Foundations of buildings and foundations of structures *in the course of construction*," and plainly excludes "Existing buildings or structures to which an addition, alteration, improvement, or repair is being made, unless specifically endorsed." *Id.* at 1, §§ (A)(1)(f) (emphasis added), (A)(2)(a). When looking at the plain, ordinary language of the contract, the court has no alternative but to read the contract as excluding from the definition of "Covered Property" the instant warehouse at the center of this dispute. *JAW The Pointe*, 460 S.W.3d at 602; *Windermere Oaks*, 67 F.4th at 675; *see also Great Am. Ins. Co.*, 512 S.W.3d at 892 (citations and internal quotation marks omitted) ("A contract's plain language controls, not what one side or the other alleges they intended to say but did not.").

Regarding Toccoa's emphases on the phrase "building or structure" in the exception to the water exclusion provision, and the phrase "Property which has been installed," to read the insurance policy as bringing "[e]xisting buildings or structures to which an addition, alteration, improvement, or repair is being made" into the definition of "Covered Property" effectively reads out the contract's own definition of covered and excluded property. *JAW The Pointe*, 460 S.W.3d at 603. The court has a duty to "examine the entire agreement and seek to harmonize and give effect to all provisions so that none will be meaningless." *Id.* (citation and internal quotation marks omitted); *see also Great Am. Ins. Co.*, 512 S.W.3d at 892 ("We have repeatedly held that every contract should be interpreted as a whole and in accordance with the plain meaning of its terms."); *Nassar*, 508 S.W.3d at 258. "No one phrase, sentence, or section of a contract should be isolated from its setting and considered apart from the other provisions." *Nassar*, 508 S.W.3d at 258. And,

if these provisions could be read as conflicting with the policy's definition of "Covered Property," as Toccoa suggests, then the Texas Supreme Court has clearly commanded that "a specific contract provision controls over a general one." *Pathfinder Oil*, 574 S.W.3d at 889. Thus, the policy's specificity of what is *not* "Covered Property"—previously existing structures—must control in this situation; the general references to "building or structure" or property that has been installed simply cannot overcome the plain, unambiguous language of the policy's exclusion.

Here the court points Toccoa to the Texas Supreme Court's decision in *Provident Life and Accident Insurance Company v. Knott*, 128 S.W.3d 211 (Tex. 2003). There, the Supreme Court succinctly stated, in relevant part:

> We disapprove of language in *Bryant*, *Johnson*, and *Tate* to the extent that the language suggests that it is proper to disregard defined terms in a policy in favor of definitions not expressed in the parties' written agreements. *When terms are defined in an insurance policy, those definitions control the interpretation of the policy.* Trinity Universal Ins. Co. v. Cowan, 945 S.W.2d 819, 823 (Tex. 1997); *see Schaefer*, 124 S.W.3d at 157, 159 (*all provisions of a policy should be given effect so that none are rendered meaningless*); *Beaston*, 907 S.W.2d at 433 (each part of the policy should be given effect and no single phrase, sentence, or section should be isolated and considered apart from the other provisions); *accord Forbeau*, 876 S.W.2d at 133–34. Reliance on defined terms in insurance policies to construe those contracts is necessary to determine the intent of the parties and integral to the application of basic principles of contract interpretation to insurance policies. . . .

*Provident Life*, 128 S.W.3d at 219 (emphases added).

Additionally, Zurich's *Reply* suggests that the language "Property which has been installed" is a "grant of coverage [that] only applies to the roof. If there are items that were installed on the roof that were damaged[,] then there would be coverage for those items." Doc. No. 110 at 6–7. After reading the policy as a whole, and giving meaning to each term and provision, particularly what the Policy defines as "Property Not Covered," the court agrees with Zurich's interpretation of this language, and ultimately, concludes there is no ambiguity here.

16

*Nassar*, 508 S.W.3d at 258 (citation and internal quotation marks omitted) ("If [the court] determine[s] that only one party's interpretation of the insurance policy is reasonable, then the policy is unambiguous and the reasonable interpretation should be adopted.") (citation and internal quotation marks omitted); *Provident Life*, 128 S.W.3d at 219 (insurance policy's definitions section control court's interpretation of rest of policy).

Next, the court points Toccoa to persuasive law stemming from a 2013 case from the Middle District of Georgia: *Campbell v. Assurance Company of America*. No. 3:12-CV-98 (CDL), 2013 WL 4495845 (M.D. Ga. Aug. 21, 2013). In *Campbell*, the court faced identical circumstances to the present case, interpreting a builder's risk insurance policy with identical language to the instant contract. *Id.* Like here, the insured argued that "the Policy is ambiguous and that he intended to purchase insurance coverage both for the existing structure and for any construction that occurred during the Policy period." *Id.* at *2. In response to this argument, the *Campbell* court concluded:

> Here, the policy is clear and unambiguous. The builder's risk Policy provided $205,000 coverage for 'New Construction' but $0 coverage for 'Existing Buildings or Structures.' [ ]. The Policy specifically excluded coverage for "Existing building or structure to which an addition, alteration, improvement, or repair is being made, unless specifically endorsed.' . . . *In other words, the Policy on its face unambiguously provided coverage only for new construction and specifically excluded coverage for existing buildings and structures.*

*Id.* (emphasis added) (internal citations omitted).

The undersigned agrees with the *Campbell* court in reading the same language contained in the instant builder's risk policy. *Id.*; *Compare with* Ex Builder's Risk Policy, Ex. A, Doc. No. 107-1 at 1, § (A)(2)(a) (same language).

Finally, the court briefly addresses Toccoa's contentions regarding Zurich's "intent" in this case. Doc. No. 107 at 6 (footnote and citation omitted) ("Zurich's flawed attempt at discerning

intent not only undermines and negates Zurich's claim that the Policy unambiguously does not provide coverage for the damages at Toccoa's warehouse, but it also placed a genuine issue of fact before the Court, as intent is a question to be decided by the jury.").  As previously stated, in determining whether coverage exists under an insurance policy, the court does not look to evidence outside the language of the instant policy. *Windermere Oaks*, 67 F.4th at 674 (citation and internal quotation  marks omitted) ("Under Texas law, insurance policies are interpreted in accordance with the rules of construction that apply to all contracts generally."); *Risinger Holdings, LLC v. Sentinel Ins. Co., Ltd.*, 565 F. Supp. 3d 844, 857 (E.D. Tex. 2021) (quoting *Gilbert Tex. Constr. L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010)) ("When determining whether an insurance policy provides coverage, Texas courts look to 'the language of the policy' under a presumption that 'parties intend what the words of their contracts say.'").  Nor does the court take into account a party's "reasonable expectations" for what an insurance policy provides. *Nautilus Ins. Co. v. Country Oaks Apartments Ltd.*, 566 F.3d 452, 458 n.4 (5th Cir. 2009) ("Texas law does not look to the 'reasonable expectations' of the insured.").

First, in its operative complaint, Toccoa states that it "was under the impression that the Policy covered all damage related to the reroofing process."  Doc. No. 52 at 3.  This argument is easily dismissed, however, as the court is bound by the plain language of the policy when determining the existence of coverage, and simply cannot consider a party's expectations during insurance acquisition. *Windermere Oaks*, 67 F.4th at 674; *Nautilus*, 566 F.3d at 458 n.4; *Risinger Holdings*, 565 F. Supp. 3d at 857.  Second, Toccoa points to Zurich's claim denial letter as evidence that "Zurich took affirmative action by looking outside of the four corners of the Policy and the plain language contained therein," and thereby "placed a genuine issue of fact before the Court."  Doc. No. 107 at 6.  These arguments overstate the contents of Zurich's denial letter.

On November 5, 2020, Zurich's National General Adjuster for Large Loss Property Claims wrote a claim denial letter to Toccoa, stating, in relevant part:

> We understand the [warehouse] sustained wind damage to the roof in connection with the storm which swept through the area on August 5, 2020.  Additional damage was also report[ed] by Toccoa relating [to] ensuing water damage to the interior surfaces of the building.
>
> Please note that after my conversations with you and investigation[,] the following has been confirmed:
>
> - Toccoa's Policy [ ] only includes renovation coverage up to $1,500,000. This coverage does not include [the] existing building.  *It was confirmed that the intent of the policy was to insure replacing the roof.*  We understand a substantial amount of damage from rainwater affected the 'existing building['s]' interior surfaces.  *As discussed, this ensuing water damage to the interior is exclusive of our adjustment as it is not covered property.*

Ex. 9, Doc. No. 97-1 at 371 (emphases added).

While the General Adjuster mentioned the intent of the policy in its letter, ultimately, she concluded by stating that the water damage to the warehouse's interior is *exclusive* of the definition of "Covered Property."  *Id.*  Once again, "[i]n construing a contract, a court's primary concern is to ascertain the intentions of the parties as expressed in the instrument."  *Windermere Oaks*, 67 F.4th at 674 (citation and internal quotation marks omitted); *JAW The Pointe*, 460 S.W.3d at 603. "As with any other contract, the parties' intent is governed by what they said" in the plain language of the contract's own language.  *Windermere Oaks*, 67 F.4th at 675 (citations and internal quotation marks omitted).  It is therefore of no import to discern either party's intent outside the plain language of the insurance contract.  Toccoa's arguments relating to coverage expectations and Zurich's intent and are not relevant to the instant analysis.

Accordingly, the court has no alternative but to interpret the instant builder's risk policy as excluding coverage for the water damage that Toccoa's previously existing warehouse incurred during the August 2020 storm.  The undersigned reads the instant policy like other courts do:  as

*only* providing coverage during the "course of construction" of the warehouse's new roof, and *specifically excluding coverage* to the warehouse's prior structures.  As such, without a provision in the policy to allege that Zurich breached, the undersigned recommends granting Zurich's instant *Motion for Summary Judgment* (Doc. No. 96) on Toccoa's breach of contract claim.  *See USAA Tex. Lloyds Co. v. Menchaca*, 544 S.W.3d 479, 494 (Tex. 2018) ("[N]o breach can occur unless coverage exists . . . If the policy does not cover the insured's loss, the insurer does not breach the policy by failing to pay benefits for that loss because the insured is not entitled to those benefits.").  The court will next turn to Toccoa's extra-contractual claims.

B.  <u>Breach of Duty of Good Faith and Fair Dealing</u>

Next, Toccoa alleges a bad faith claim against Zurich, stating that "Zurich breached its duty [of good faith and fair dealing] when it denied payment of Toccoa's claim filed August of 2020 despite Zurich's liability being reasonably clear."  Doc. No. 52 at 6, ¶ 24.  Alternatively, Toccoa states that "in the event the Policy does not cover the damage caused by the flooding event, Zurich remains liable for its agent's failure to properly procure a builder's risk policy covering the interior portions of the warehouse despite this request having been made by Toccoa."  *Id.*, ¶ 25.  In its motion, Zurich maintains that these extra-contractual claims cannot survive without a live breach of contract claim.  Doc. No. 96 at 14 (footnote and citation omitted) ("Extra-contractual causes of action . . . usually cannot be maintained without a breach of contract.").

"In *Menchaca*, [the Texas Supreme Court] recognized two paths an insured may take to establish the damages caused by an insurer's violation of the Insurance Code: either the insured establishes (1) 'a right to receive benefits under the policy' or (2) 'an injury independent of a right to benefits.'"  *In re State Farm Mut. Auto. Ins. Co.*, 629 S.W.3d 866, 872–73 (Tex. 2021) (quoting *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 500 (Tex. 2018)).  The undersigned has

already concluded that Toccoa cannot succeed under the first path because the instant builder's risk policy does not confer coverage to the interior of the warehouse at the center of the dispute. *See supra*.  Therefore, Toccoa can only succeed on the independent rights theory.

Under the independent rights theory, "'if an insurer's statutory violation causes an injury independent of the insured's right to recover policy benefits, the insured may recover damages for that injury even if the policy does not entitle the insured to receive benefits.'"  *In re State Farm*, 629 S.W.3d at 873 (quoting *Menchaca*, 545 S.W.3d at 499).  The type of insurance policy at issue is not relevant for this analysis, as it applies to all insurance policies.  *Id.* ("The dual pathway outlined in *Menchaca* emerges from a line of cases that includes UIM cases and does not distinguish between varieties of insurance policies.") (collecting cases).

To recover under an "'injury independent of the policy claim,'" Toccoa must show that its "'damages are truly independent of [its] right to receive policy benefits.'"  *Id.* (quoting *Menchaca*, 545 S.W.3d at 500).  "In other words, to recover under an independent-injury theory, [Toccoa] must establish that [Zurich's] statutory violations caused an injury apart from [Zurich's] failure to pay as much as [Toccoa] believe[s] they should have been paid" under the present builder's risk policy.  *Id.*  Otherwise, "[w]hen an insured seeks to recover damages that 'are predicated on,' 'flow from,' or 'stem from' policy benefits, the general rule applies and precludes recovery unless the policy entitles the insured to those benefits."  *Menchaca*, 545 S.W.3d at 500 (citations omitted).

Turning to the operative complaint, Toccoa's bad faith claim is predicated upon the damages it seeks to recover from the builder's risk policy.  Specifically, Toccoa states that "As a result of Zurich's breach of its duty of good faith and fair dealing, Toccoa has suffered damages. Therefore, Zurich is liable for its bad faith actions *resulting from its denial of payment to Toccoa* despite liability being reasonably clear."  Doc. No. 52 at 6, ¶ 24 (emphasis added).  Accordingly,

the general rule must apply and bar Toccoa's extra-contractual claims. *In re State Farm*, 629 S.W.3d at 874 (emphases in original) (quoting *Menchaca*, 545 S.W.3d at 499–500) ("When it comes to damages, the question is not whether the insured's *claims* are independent of the right to receive policy benefits. The question is whether the alleged '*damages* are truly independent of the insured's right to receive policy benefits.'").

For example, *In re State Farm Mutual Automobile Insurance Company* is directly on point to the instant matter. There, the insureds' damages were "predicated on State Farm's obligation to pay them under their UIM policies." *Id.* "Said otherwise, the insureds' theory of damages is that if State Farm had followed the Insurance Code, it would have paid more in UIM benefits than it did. These are not 'damages that are truly independent of the right to receive policy benefits.' To the contrary, the insureds' entitlement to these damages is entirely predicated on their entitlement to policy benefits." *Id.* Here too, Toccoa seeks damages predicated on its belief that Zurich owes it benefits under the policy. As such, these cannot be "damages that are truly independent of the right to receive policy benefits." *Id.* (citation and internal quotation marks omitted)

Furthermore, Toccoa seeks to hold Zurich vicariously liable for the Maida Agency's failure to procure it with an insurance policy providing coverage for the interior of the warehouse. *See* Doc. No. 52 at 6, ¶ 25 ("Alternatively, . . . Zurich remains liable for its agent's failure to properly procure a builder's risk policy covering the interior portions of the warehouse despite this request having been made by Toccoa."); Doc. No. 107 at 7 ("In the event the water damage at issue is not covered under the Policy, Zurich remains liable to Toccoa for Maida's representations to Toccoa on what damages the Policy covered at the time Toccoa paid the premium."). In support of this

vicarious liability theory, Toccoa cites to the "Benefits-Lost Rule," as explained in *Menchaca*. Doc. No. 107 at 7 n.24 (citing *Menchaca*, 545 S.W.3d at 497–98).

Under the "Benefits-Lost Rule," an insured may recover benefits as actual damages under the Insurance Code "*if the insurer's conduct caused the insured to lose that contractual right*." *Menchaca*, 545 S.W.3d at 497 (emphasis in original). This occurs in one of three circumstances: (1) when an insurer misrepresents that its policy provides coverage that the policy "does not in fact provide" and the insured is "adversely affected" or injured due its reliance on the misrepresentation; (2) in claims based on waiver and estoppel, "if the insurer's statutory violations prejudice the insured, the insurer may be estopped from denying benefits that would be payable under its policy as if the risk had been covered"; and (3) when the insurer's statutory violation "actually caused the policy not to cover losses that it otherwise would have covered." *Id.* at 497–98 (internal citations and quotation marks omitted).

The issue here is primarily procedural. In its *Third Amended Complaint*, Toccoa alleges its vicarious liability for negligent procurement theory, stating, "Zurich remains liable for its agent's failure to properly procure a builder's risk policy covering the interior portions of the warehouse despite this request having been made by Toccoa." Doc. No. 52 at 6, ¶ 25. However, in its *Response* to Zurich's *Motion for Summary Judgment*, Toccoa reiterates this theory *and* raises new theories subject to *Menchaca*'s three circumstances, stating "Stillmore, if the Policy does not provide the requisite coverage, Zurich is estopped from denying the benefits that would be payable as the damage had been covered." Doc. No. 107 at 7. Then, Toccoa goes on, stating, "Accordingly, in the event the requisite coverage was not requested and secured, this is the product of Zurich's agent's actions, which, coupled with Zurich's omissions in handling Toccoa's claims, constitute statutory violations that prejudice Toccoa."

First, the undersigned notes that none of the three circumstances articulated in *Menchaca* recognize Toccoa's asserted vicarious liability for a negligent procurement claim. *See* 545 S.W.3d at 497–98. Further, the court cannot consider Toccoa's new argument brought under a theory of estoppel, as this was never raised in the complaint. *Bye v. MGM Resorts Int'l, Inc.*, 49 F.4th 918, 926 (5th Cir. 2022) ("[T]his court has 'repeatedly emphasized' that new claims need not be considered when first raised in responses to summary judgment motions."); *Jackson v. Gautreaux*, 3 F.4th 182, 188 (5th Cir. 2021) ("It is well settled in our circuit that 'a claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court.'") (collecting cases). The court therefore will not consider Toccoa's new estoppel theory, as referenced in its *Response*. Doc. No. 107 at 7. Accordingly, the undersigned recommends granting Zurich's motion (Doc. No. 96) regarding Toccoa's bad faith claims as well.

## C. Opinions of Randal G. Cashiola

Finally, Toccoa's bad faith argument begins with a footnote that it "incorporates by reference" its *Sur-Reply* to Zurich's *Motion to Exclude Opinions of Randal Cashiola* (Doc. No. 103). Doc. No. 107 at 7 n.19. To the extent that Toccoa relies on the opinions of attorney Randal G. Cashiola, whom it proffered as an expert in insurance-claims handling, Cashiola's proffered testimony fails to create a genuine dispute of material fact. As previously stated, the interpretation of the terms of a contract is a question of law for the court to decide. *See generally Windermere Oaks*, 67 F.4th at 672; *see Buchholz*, 65 F.4th at 769 (citation omitted) ("Whether an insurance contract is ambiguous is a question of law."); *X Techs.*, 719 F.3d at 413 (citing *Meek*, 919 S.W.2d at 808) ("Whether a party has breached a contract is a question of law for the court."); *Am. Int'l*, 620 F.3d at 562 (emphasis added) ("Texas law provides that . . . the interpretation of an insurance

policy is a question of law *for the court* to determine."). An expert witness therefore plays no role in this process.

For this reason, "[e]xpert testimony on contract interpretation is generally inadmissible." *Hoactzin Partners, L.P. v. Fieldwood Energy, LLC*, No. CV H-17-3696, 2019 WL 13210657, at *1 (S.D. Tex. Oct. 18, 2019) (internal citation and quotation marks omitted); *see also Corinth Inv. Holdings, LLC v. Evanston Ins. Co.*, No. 4:13-CV-00682, 2014 WL 7146040, at *5 (E.D. Tex. Dec. 15, 2014) (excluding expert report that "reads like a legal brief which analyzes the elements of the statutory claims and provides a legal definition of 'knowingly.' Simply put, Huddleston's report contains the legal arguments and analysis that the Court would expect the attorneys for [the insurance company] to make regarding the applicable law and the relevant facts that should apply in this case."); *Apache Corp. v. W&T Offshore, Inc.*, No. CV H-15-0063, 2016 WL 10672072, at *2 (S.D. Tex. Sept. 26, 2016) (excluding proffered attorney expert testimony that interpreted terms of a joint operating agreement).

Accordingly, the court has not and will not take into account the opinions of Randal G. Cashiola in its assessment of the instant motion for summary judgment, for they all pose legal conclusions.

## IV.  <u>Recommendation</u>

For the foregoing reasons, the undersigned recommends granting Defendant American Zurich Insurance Company's *Motion for Summary Judgment* (Doc. No. 96).

## V.  <u>Order</u>

As the court has resolved the pending motion for summary judgment, it is therefore **ORDERED** that Plaintiff Toccoa, Ltd.'s *Motion for Oral Hearing* (Doc. No. 117) is **DENIED AS MOOT**.

25

Further, because the undersigned did not consider Plaintiff Toccoa, Ltd.'s *Sur-Reply to American Zurich Insurance Company's Motion for Summary Judgment* (Doc. No. 112) in the resolution of the instant motion for summary judgment, it is further **ORDERED** that Plaintiff's *Motion to Strike Defendant American Zurich Insurance Company's Sur-Reply* (Doc. No. 115) is also **DENIED AS MOOT**.

## VI.    Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C), each party to this action has the right to file objections to this Report and Recommendation.  Objections to this Report must (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, (3) be served and filed within fourteen (14) days after being served with a copy of this Report, and (4) be no more than eight (8) pages in length.  *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2); E.D. TEX. CIV. R. CV-72(c).  A party who objects to this Report is entitled to a *de novo* determination by the United States District Judge of those proposed findings and recommendations to which a specific objection is timely made. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this Report, within fourteen (14) days of being served with a copy of this Report, bars that party from: (1) entitlement to *de novo* review by the United States District Judge of the findings of fact and conclusions of law, and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States

District Judge. *See Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED this 8th day of June, 2023.

Zack Hawthorn
United States Magistrate Judge